## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| ALFREDA TURNBOW, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 24-1275 (RC) |
| | : | | |
| v. | : | Re Document No.: | 7 |
| | : | | |
| SIBLEY MEMORIAL HOSPITAL, | : | | |
| | : | | |
| Defendant. | : | | |

### <u>MEMORANDUM OPINION</u>

#### Granting Defendant's Motion For Summary Judgment

## I. INTRODUCTION

Plaintiff Alfreda Turnbow brings this action *pro se* against Defendant Sibley Memorial Hospital ("Sibley") alleging (1) failure to accommodate her disability under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"); and (2) racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Sibley now moves for summary judgment on both claims, asserting that there is no genuine dispute of material fact for trial. The Court agrees and accordingly grants Sibley's motion for summary judgment.

## II. BACKGROUND

### A. Factual Background

Turnbow began a full-time position as a Registered Nurse in the Emergency Department at Sibley in April 2020. Ex. 1 to Mem. L. Supp. Def.'s Mot. Dismiss or Alt. Summ. J. ("Def.'s Mot.") at 1, 5, ECF No. 7-3. According to records submitted by Sibley, Turnbow presently remains employed in that position. *See* Ex. 2 to Def.'s Mot. ("Ex. 2"), ECF No. 7-3. In October

2022, Turnbow sustained an injury while working in the Sibley Emergency Department.  *See* Ex. 11 to Def.'s Mot. ("Ex. 11") at 2, ECF No. 7-3.[1]

On January 6, 2023, Turnbow was seen by her treating physician Dr. Anthony Ibe, who completed a medical examination form that stated Turnbow should be "exempt from duties on medical grounds" from January 6, 2023, through January 15, 2023.  *See* Ex. 3 to Def.'s Mot. ("Ex. 3"), ECF No. 7-3.  Dr. Ibe further concluded Turnbow could "resume duties" on January 16, 2023, and should "follow up in the office" on February 7, 2023.  *Id.*  Dr. Ibe's medical examination form also contained a hand-written note stating Turnbow should pursue physical therapy, resume "light duty," and have "no patient contact."  *Id.*  Later that day, Dr. Ibe revised his medical examination form, changing the return-to-work date from January 16 to January 19, 2023.  *See* Ex. 6 to Def.'s Mot. ("Ex. 6"), ECF No. 7-3.  Dr. Ibe's revised medical examination form recommended continuing physical therapy, and included a handwritten list of restrictions on duties Turnbow could perform upon her return-to-work.[2]  *Id.*

Turnbow alleges that, around the time of her appointment with Dr. Ibe, she requested "reasonable accommodation of her disability under Title I of the ADA through her employers . . . Alicia Walker, . . . Kim Anderson-Carroll, . . . Jessica Carrilo, and [Diana]

---

[1] Turnbow alleges her injury caused a "seizure disorder and wrist decrease[d] mobility" and that she "regularly takes prescription medication and sees a doctor for treatment."  Compl. ¶ 15(b), ECF No. 1.  Turnbow further alleges her disability "substantially limits her ability to move her extremities" and imposes "lift restraints," which cause Turnbow to feel "worried, frustrated, or helpless."  *Id.* ¶ 15(c).  However, Turnbow has not produced any exhibits to support her claimed injury, and these allegations are confined to the pleadings.  Turnbow applied for workers' compensation benefits after sustaining this alleged injury, Def.'s Mot. at 2, ECF No. 7-1, but neither Turnbow nor Sibley have produced exhibits showing the date on which Turnbow applied for such compensation, nor illustrating the duration of this compensation.

[2] These restrictions included: "[r]esume on light duty (clerical as listed), [n]o carrying, lifting, pushing, pulling > 2 lbs, [n]o twisting, no bending, [n]o patient contact, [c]omputer work, [p]hone, [f]iling, [f]axing, scanning, [n]o lifting overhead."  Ex. 6.

Carrillo."[3]  Compl. ¶ 15(e), ECF No. 1.  On January 13, 2023, the Occupational Injury Service Coordinator at Sibley, Jessica Carrillo, responded to Turnbow's request for an accommodation via email.  Ex. 4 to Def.'s Mot., ECF No. 7-3.  Carrillo's email to Turnbow stated that Turnbow's manager, Kim Anderson-Carroll, was unable to "accommodate [Turnbow] in the Emergency [D]epartment with [Dr. Ibe's] restrictions" but was able to "find [Turnbow] an assignment with those restrictions (no patient contact) in the ICU."  *Id.*  Anderson's email instructed Turnbow to call for further details on the accommodation.  *Id.*

Later that day, Turnbow called Carrillo in response to the email.  Ex. 5 to Def.'s Mot. ("Ex. 5"), ECF No. 7-3.  During that phone call, Carillo informed Turnbow she was "expected to report to the ICU on January 16, 2023," but Turnbow allegedly refused to do so.  *Id.*  Turnbow then informed Anderson she was planning to visit Dr. Ibe again to discuss her restrictions, and that she would send an updated medical examination report to Sibley.  *Id.*  After that call, Sibley identified a *second* light duty position, located in the Emergency Department, that it believed accommodated Turnbow's restrictions.  *Id.*

Sometime after the phone call,[4] Turnbow submitted a disability certificate from The Centers for Advanced Orthopedics stating that she was to remain out of work until she could be re-evaluated on February 16, 2023.  Ex. 10 to Def.'s Mot. ("Ex. 10"), ECF No. 7-3.  The

---

[3] The Court assumes Turnbow's reference to "Alicia Carrillo" in ¶ 15(e) of her Complaint actually refers to "Diana Carrillo."  *See* Compl. ¶ 19(e)–(f); Ex. 8 to Def.'s Mot. ("Ex. 8"), ECF No. 7-3.

[4] Though the disability certificate is dated January 16, 2023, it is unclear from Sibley's motion and exhibits when exactly this certificate was submitted.  *See* Def.'s Mot. at 4 ("Plaintiff then submitted a note from her orthopedist directing that she remain out of work and advising that she would be re-evaluated on February 16, 2023.").  Regardless of the exact date of submission, Turnbow does not produce any exhibits showing that she discussed a return-to-work plan or future accommodations with Sibley after its attempts to contact her on January 19, 2023.

disability certificate, dated January 16, 2023, also advised "removing light duty" and continuing with physical therapy.  *Id.*

After receiving the updated medical evaluation forms on January 16, 2023, Sibley asserts that it called Turnbow on multiple occasions to discuss updated accommodations and return-to-work plans in light of the new restrictions but could not reach Turnbow because her telephone line was busy.  *See* Def.'s Mot. at 3, ECF No. 7-1; Ex. 9 to Def.'s Mot. ("Ex. 9"), ECF No. 7-3. Jessica Carillo requested that Alicia Walker—the Lead Workers' Compensation Claims Adjustor for Sibley—notify Turnbow's then-counsel of Sibley's attempts to contact Turnbow to discuss her return-to-work accommodations.  Ex. 7 to Def.'s Mot. ("Ex. 7"), ECF No. 7-3.  Turnbow's counsel notified Walker she would "let [Turnbow] know" of Sibley's attempts to contact her.[5] Ex. 8 to Def.'s Mot. ("Ex. 8"), ECF No. 7-3.  Furthermore, Conrado Utanes, the manager of Sibley's Occupational Injury Clinic, emailed Turnbow on January 18, 2023, requesting that she contact the Emergency Department to discuss return-to-work logistics.  Ex. 9.  Utanes's email to Turnbow notified her that Utanes had "attempted calling . . . several times but [Turnbow's] phone line is always busy."  *Id.*

The next documented communication between Turnbow and Sibley occurred on February 14, 2023, when Turnbow emailed her manager, Anderson-Carroll, informing her that she was still "unable to return to light duty" due to her injuries.  Ex. 11.  Turnbow also informed Anderson-Carroll she had not "received medical bill reimbursement from workers' compensation . . . full treatment approval [or] . . .  full compensation payment."  *Id.*  Anderson-Carroll responded by providing Turnbow with Sibley's Workers' Compensation Adjustor's

---

[5] Per Turnbow's request, her counsel withdrew their representation on February 13, 2023, and all further communications from Sibley were made directly to Turnbow.  Ex. 8 to Def.'s Mot.

contact information and encouraged her to direct all compensation questions to that department. *Id.* Turnbow confirmed she would follow up with the correct point of contact. *Id.*

In March 2023, Turnbow submitted another medical examination report from Dr. Ibe stating Turnbow was unable to return to light duties, and that her return-to-work date was "unknown." Ex. 12 to Def.'s Mot., ECF No. 7-3. Similar letters were submitted from Dr. Ibe in May 2023 and June 2023. *See* Ex. 13 to Def.'s Mot. ("Ex. 13"), ECF No. 7-3; Ex. 14 to Def.'s Mot. ("Ex. 14"), ECF No. 7-3.

The parties dispute whether Turnbow remains a Sibley employee. Sibley argues that Turnbow remains a full-time Sibley employee and submits what appears to be a Human Resources display designating Turnbow as "Full Time" and "Active" to support its assertion. Ex. 2. Turnbow claims her employment has been terminated—though she does not provide a clear termination date—and alleges that Sibley fired her "without any pay or benefits" when it placed her "on a no-[call] schedule." Pl.'s Am. Resp. Def.'s Mot. Dismiss or Alt. Summ. J. ("Pl.'s Opp'n") at 18, ECF No. 12.[6]

## B. Procedural Background

Turnbow filed this lawsuit on April 30, 2024.[7] Compl. at 11. On October 4, 2024, Sibley moved to dismiss, or in the alternative, for summary judgment as to Turnbow's ADA and Title VII claims. Def.'s Mot. at 1–2, 13–14. With respect to Turnbow's ADA claim, Sibley

---

[6] Turnbow does not produce exhibits to support her assertion that Sibley terminated her by placing her on a "'no call' schedule." *See, e.g.*, Pl.'s Opp'n at 13–14. Instead, Turnbow cites to the *same* exhibit Sibley cites to show her status as an active employee—a screenshot of Sibley's HR log showing Turnbow's active nursing status at the hospital as of September 24, 2024. *See* Pl.'s Opp'n at 15 (citing Ex. 2).

[7] Turnbow filed her discrimination claim with the Equal Employment Opportunity Commission ("EEOC") in August 2023, alleging discrimination on the basis of race and disability. Def.'s Mot. at 5. Turnbow received a right-to-sue letter from the EEOC in January 2024. *Id.* Sibley does not dispute that Turnbow's claims are exhausted. *See* Def.'s Mot. at 8.

argues Turnbow cannot show Sibley failed to offer her a reasonable accommodation because Turnbow, not Sibley, abandoned the interactive process. *Id.* at 8–11. Furthermore, with respect to her Title VII claim, Sibley contends Turnbow has not suffered an adverse employment action and, moreover, cannot show Sibley's nondiscriminatory explanation for the events at issue is pretextual. *Id.* at 12–13.

On December 2, 2024, Turnbow filed an Opposition to Sibley's Motion to Dismiss, or in the Alternative, for Summary Judgment, arguing Sibley's Motion for Summary Judgment is "premature" and that additional discovery "will show evidence that similarly situated employees . . . were treated differently by Defendant Sibley." Pl.'s Opp'n at 18. Sibley replied to Turnbow's Opposition on December 18, 2024, reiterating its ADA and Title VII arguments, and claiming Turnbow has not shown additional discovery would produce issues of triable fact that warrant the delay of summary judgment. Def.'s Reply in Support Mot. Dismiss or Alt. Summ. J. ("Def's Reply"), ECF No. 13.

### III.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248. On summary judgment, the Court views all evidence "in the light most favorable to the nonmoving party and . . . must draw all reasonable inferences in favor of the nonmoving party." *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex*, 477 U.S. at 324. In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence[,]" *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-movant, *Anderson*, 477 U.S. at 255. Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to summary judgment, the court may defer considering the motion, deny it, allow the nonmovant time to obtain evidence or take discovery, or "issue any other appropriate order." Fed. R. Civ. P. 56(d). To obtain relief under Rule 56(d), the nonmovant must state with "sufficient particularity" why additional discovery is necessary by satisfying three criteria: the nonmovant must (1) outline the particular facts she intends to discover and describe why those facts are necessary; (2) explain why she cannot produce the facts at this time; and (3) show the information is in fact discoverable. *Convertino v. U.S. Dep't of Just.*, 684 F.3d 93, 99–100 (D.C. Cir. 2012) (quoting *Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1045 (D.C. Cir. 2008)). As relevant here, courts liberally construe documents filed by *pro se* litigants, including in opposition to motions for summary judgment. *Oviedo v. Washington*

*Metro. Area Transit Auth.*, 948 F.3d 386, 392 (D.C. Cir. 2020). But Rule 56 is not "designed to allow 'fishing expeditions,' and plaintiffs must specifically explain what their proposed discovery would likely reveal and why that revelation would advance the plaintiffs' case." *Milligan v. Clinton*, 266 F.R.D. 17, 18–19 (D.D.C. 2010) (quoting *Graham v. Mukasey*, 608 F. Supp. 2d 50, 54 (D.D.C. 2009)).

## IV.  ANALYSIS

The Court analyzes each of Turnbow's claims in turn, first addressing her contention that Sibley failed to accommodate her disability in violation of the ADA. The Court then addresses Turnbow's claim that Sibley discriminated against her on the basis of race in violation of Title VII of the Civil Rights Act of 1964. After careful review of the parties' filings and the record, the Court concludes that Turnbow has failed to submit evidence that would allow a reasonable jury to find in her favor on either of her claims.

### A.  Failure to Accommodate

Turnbow claims Sibley failed to accommodate her disability in violation of the ADA by proposing light duties that required the use of her wrist, and by refusing to assign her to vacant, appropriate positions in the Emergency Department. *See* Compl. ¶ 15(g)–(j). Turnbow further claims Sibley neglected its duty to engage in the interactive process by failing to contact her through established communication channels to inform her of the potential accommodations. *Id.* at 9.

Sibley does not dispute that Turnbow was a qualified individual with a disability or that Sibley had notice of her disability. Def.'s Mot. at 8. Sibley instead argues that Turnbow cannot show that Sibley denied her request for reasonable accommodation because Sibley offered her two light duty positions based on Dr. Ibe's January 6, 2023, medical examination reports. *Id.*

Further, Sibley argues that it is not responsible for the breakdown of the interactive process, but that Turnbow is, due to her failure to respond to Sibley's communications. *Id.* at 8–9. Finally, Sibley contends Turnbow has not shown she could return to work at all, and that Dr. Ibe's "open-ended representations" functionally amount to "an indefinite leave period" which is not a reasonable accommodation an employer must grant under the ADA. *See id.* at 11 (quoting *Sampson v. Citibank, F.S.B.*, 53 F. Supp. 2d 13, 18 (D.D.C. 1999), *aff'd*, 221 F.3d 196 (D.C. Cir. 2000)). For the following reasons, this Court agrees with Sibley, and grants summary judgment in favor of Sibley as to Turnbow's failure to accommodate claim.

Under the ADA, a covered employer is required to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Minter v. District of Columbia*, 809 F.3d 66, 69 (D.C. Cir. 2015) (citation omitted). To state a claim for failure to accommodate, the plaintiff must demonstrate that "(1) [s]he was a qualified individual with a disability; (2) [her] employer had notice of [her] disability; and (3) [her] employer denied [her] request for a reasonable accommodation." *Badwal v. Bd. of Trs. of the Univ. of D.C.*, 139 F. Supp. 3d 295, 312 (D.D.C. 2015) (citing *Ward v. McDonald*, 762 F.3d 24, 31 (D.C. Cir. 2014)). Furthermore, a plaintiff must show that she "*could have been reasonably accommodated* but for the employer's lack of good faith," such that "a reasonable accommodation would have allowed her to perform the essential functions of her job." *Floyd v. Lee*, 968 F. Supp. 2d 308, 327–28 (D.D.C. 2013) (quoting *Ballard v. Rubin*, 284 F.3d 957, 960 (8th Cir. 2002)).

In determining an appropriate reasonable accommodation, there should be "'a flexible give-and-take' between employer and employee 'so that together they can determine what accommodation would enable the employee to continue working.'" *Ward*, 762 F.3d at 32

(quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005)).  When a breakdown occurs, "courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary." *Id.* (quoting *Sears*, 417 F.3d at 805).  "[C]ourts should attempt to isolate the cause of the breakdown and then assign responsibility." *Id.* (quoting *Sears*, 417 F.3d at 805).  "In sum, to establish that her request was 'denied,' [a plaintiff] must show either that the [employer] in fact ended the interactive process or that it participated in the process in bad faith." *Id.*

*1.  Turnbow Has Not Submitted Evidence That Sibley Denied Her Reasonable Accommodations*

Turnbow contends that the ICU and Emergency Department positions Sibley offered were inappropriate and that her reasonable accommodation request was effectively denied because the light duty positions in question required the use of her wrist.  Compl. ¶ 15(h).  Turnbow also contends that suitable positions were indeed available, but that Sibley refused to offer these vacant, appropriate positions to her.  *Id.* ¶ 15(n).  Neither of these arguments is persuasive.

First, the Court is unpersuaded by Turnbow's contention that Sibley effectively denied her request by offering light duty positions that involved the use of her wrist.  *See id.* ¶ 15(h).  On January 13, 2023, Sibley informed Turnbow it was able to accommodate her in the ICU based on the January 6, 2023 reports from Dr. Ibe.  *See* Exs. 4–5, 8.[8]  Later on January 13, 2023, Sibley *also* identified an accommodation for Turnbow in the Emergency Department.  Ex. 5.  As Sibley rightly points out, the restrictions listed on Dr. Ibe's original medical examination

---

[8] The ICU light duty position would involve "[c]leaning equipment, tape residue, stocking PPE [Personal Protective Equipment] neatly, wiping down COVID carts, door handles, tabletops, phones, entering Plant Ops tickets, etc. (no patient contact)."  Ex. 8.

forms—on which Sibley relied to propose accommodations on January 13, 2023—did not prohibit Turnbow's use of her wrist.[9]  Def.'s Mot. at 9.  Furthermore, after the Center for Advanced Orthopedics issued a disability certificate on January 16, 2023, postponing Turnbow's return-to-work, Sibley continued its attempts to contact Turnbow (apparently to no avail) to discuss logistics and future accommodations in the Emergency Department.  *See* Ex. 9–10.

Second, Turnbow's claim that Sibley denied her accommodation request by refusing to offer available and appropriate positions falls flat because Turnbow has failed to proffer any non-conclusory evidence of the existence of such a position.  *See* Compl.; Pl.'s Opp'n at 20.  Even armed with such evidence, Turnbow would still need to show that the other accommodations Sibley offered were unreasonable.  *See Ward*, 762 F.3d at 32.  The standard under *Ward* for determining whether an employer satisfactorily offered an employee a reasonable accommodation is not whether the reasonable accommodation was one the plaintiff *wanted*, but rather whether the "accommodation would enable the employee to continue working."  *Id.* (quoting *Sears*, 417 F.3d at 805).  Sibley is not required to provide Turnbow with an "accommodation she requests or prefers, the employer need only provide some accommodation." *Senatore v. Lynch*, 225 F. Supp. 3d 24, 34 (D.D.C. 2016) (quoting *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1305 (D.C. Cir. 1998) (en banc)).

*2. Turnbow Has Not Shown That Sibley Abandoned The Interactive Process*

Even assuming the accommodations Sibley offered Turnbow were unreasonable, Turnbow must show Sibley ended the interactive process to establish her request was denied.

---

[9] Only *after* Sibley had proposed the two light duty accommodations on January 13, 2023—one at the ICU and the other at the Emergency Department—did Dr. Ibe issue new medical examination forms stating Turnbow was not to "perform cleaning equipment of any kind."  *See* Ex. 13 (dated May 23, 2023); Ex. 14 (dated June 30, 2023).

*Ward*, 762 F.3d at 32 ("[T]o establish that her request was 'denied,' [a plaintiff] must show
either that the [employer] in fact ended the interactive process or that it participated in the
process in bad faith."). Sibley, on multiple occasions, reached out to Turnbow requesting that
she reply to discuss the details of her return-to-work plan and light duty accommodations. *See,
e.g.*, Ex. 9 (stating a Sibley employee "attempted calling . . . several times but [Turnbow's]
phone line is always busy"). The various emails from Sibley employees to Turnbow, recorded in
Sibley's exhibits, demonstrate that Sibley was engaged throughout the interactive process. *See,
e.g.*, Exs. 7, 9 (stating a Sibley employee called Turnbow on multiple occasions to advise her of
the new position, but her telephone line was busy each time).

    Turnbow argues that Sibley did not use the proper email address when attempting to
contact her with information regarding accommodations. Pl.'s Opp'n at 9. Turnbow claims, but
does not file any exhibits to show, that she provided the purported email address of record,
"dclldd3@aol.com," to Sibley, and that Sibley neglected to use this email. *Id.* In fact, Sibley *did*
use this email address in a communication with Ms. Turnbow on February 15, 2023. *See* Ex. 11.
Moreover, on January 18, 2023, Sibley contacted Turnbow's then-counsel to inform them of
Sibley's ability to accommodate Turnbow effective January 19, 2023. *See* Ex. 8 at 2. Sibley
informed Diana Carrillo, a Workers Compensation Manager at Malloy Law Offices, LLC, that
"telephone calls and emails" were made to Turnbow but that there had been "no response." *Id.*
On January 18, 2023, Diana Carrillo responded to Sibley's email, saying she "let [Turnbow]
know" of the accommodations. *See id.* at 1.

    Turnbow's claim that Sibley failed to engage in the interactive process by neglecting to
use the proper email is not only unsupported by the record, but also legally insufficient. The
interactive process is a "'flexible give-and-take' between employer and employee." *Ward*, 762

F.3d at 32 (quoting *Sears*, 417 F.3d at 805).  Turnbow could have, but did not, follow-up with

Sibley to inquire about her accommodations.  Even assuming Sibley failed to use the email

address of record, it is incumbent upon Turnbow to *also* engage in the interactive process by

attempting to communicate with Sibley regarding her accommodations.  *See Tovar v.

CallisonRTKL, Inc.*, No. 21-2975, 2024 WL 2891619, at *5 (D.D.C. June 10, 2024) (holding an

employer did not end the interactive process where an employee did not reengage in

conversation with the employer regarding accommodations).  Turnbow has not produced any

exhibits showing unsuccessful attempts to contact Sibley regarding her accommodations.  To the

contrary, Sibley's exhibits demonstrate prompt responses to Turnbow's emails and phone calls.

*See, e.g.*, Ex. 11 (responding to Turnbow's request for information in 24 hours).  Sibley's timely

attempts to communicate with Turnbow regarding potential accommodations bear the hallmarks

of a good faith effort to engage in the interactive process.  *See* Ex. 11; *Ward*, 762 F.3d at 34.

### 3.  Turnbow Has Not Shown That She Could Have Been Accommodated

Finally, Turnbow has not carried her burden of showing she "*could have been reasonably

accommodated* but for the employer's lack of good faith."  *Floyd*, 968 F. Supp. 2d at 327

(quoting *Ballard*, 284 F.3d at 960).  As Dr. Ibe revised his medical examination forms, the list of

accommodations Turnbow required became more expansive.  *Compare* Ex. 3 (allowing for a

return to light duty on January 16, 2023, and listing only one restriction), *with* Ex. 6 (allowing

for a return to light duty on January 19, 2023, and listing seven additional restrictions).

Moreover, the Center for Advanced Orthopedics stated Turnbow was unable to perform any

duties and could not return to work until she was reevaluated on February 16, 2023.  Ex. 10.

Sibley's printed job description for registered nurses, signed by Turnbow upon beginning

her position, list the following duties:  "[l]ift, move, push, pull, and transport patients and

equipment (minimum 50lbs)" and " [e]xtensive walking sitting, bending, stopping[,] and

standing." Ex. 1 to Def.'s Mot. at 4, ECF No. 7-3. Additionally, "manual dexterity" is expressly

listed on the form as a necessary skill for registered nurses. *Id.* Dr. Ibe and the Center for

Advanced Orthopedics produced medical assessments precluding Turnbow from undertaking

many of the duties listed on the job description form. *See* Ex. 6 (recommending Turnbow

engage in "clerical" duties only); Ex. 10 (recommending Turnbow avoid even light duties). It is

unclear from the record which, if any, of the registered nursing duties Turnbow could perform.

In any event, Turnbow bears the burden to "establish that a reasonable accommodation would

have allowed her to perform the essential functions of her job." *Floyd*, 968 F. Supp. 2d at 328.

Turnbow has not submitted any evidence to show she was able to perform the essential elements

of the job of a registered nurse at Sibley, and as such has not met this burden.

 Turnbow also asserts that summary judgment is improper at this time because she "has

not had an opportunity to make full discovery." Pl.'s Opp'n at 2. But Turnbow does not identify

any facts that she would intend to discover related to her ADA claim. *See Strang v. U.S. Arms*

*Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989) (rejecting argument that

summary judgment was inappropriate because nonmovant "did not state with sufficient

particularity . . . why discovery was necessary"). Thus, she has failed to carry her burden to

delay summary judgment on this ground.

 Based on the record, Turnbow cannot demonstrate that Sibley "denied" her request for

accommodations, that it "in fact ended the interactive process," or that "it participated in the

process in bad faith." *See Ward*, 762 F.3d at 32. Moreover, Turnbow has not carried her burden

of showing that she "could have been reasonably accommodated but for the employer's lack of

good faith." *Floyd*, 968 F. Supp. 2d at 327. As a result, Turnbow does not demonstrate a

genuine dispute of material fact for trial on her failure to accommodate claim, and the Court grants summary judgment on her accommodation claim in favor of Sibley.

### B.  Employment Discrimination Under Title VII

Turnbow claims she suffered disparate treatment on account of her race in violation of Title VII of the Civil Rights Act of 1964 because Sibley refused to grant her accommodations that similarly situated white nurses have been offered in the past.  Compl. ¶ 15(h–o).  Turnbow also asserts summary judgment is improper at this time because she "has not had an opportunity to make full discovery."  Pl.'s Opp'n at 2.  Sibley responds by arguing that Turnbow cannot establish disparate treatment because Turnbow has not been terminated from her employment, and as such has not been subjected to an adverse employment action.  Def.'s Mot. at 12–13.  Sibley also contends that, even if Turnbow has been subjected to an adverse employment action, she has not shown that Sibley's justification is pretextual.  *Id.* at 13.  That is because Turnbow has not identified similarly situated white nurses that have received such accommodations in the past or suggested why she may expect additional discovery would unearth the existence of similarity situated nurses.  *Id.*  Turnbow fails to submit exhibits showing a genuine dispute as to the existence of similarly situated white employees that were offered the reasonable accommodations that she claims to have been denied.  *See* Compl.; Pl.'s Opp'n.  Accordingly, this Court grants summary judgment in favor of Sibley on the employment discrimination claim.

Title VII of the Civil Rights Act makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  A plaintiff states a prima facie case of employment discrimination by establishing that "(1) she is a member

of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable

action gives rise to an inference of discrimination." *Stella v. Mineta*, 284 F.3d 135, 145 (D.C.

Cir. 2002) (quoting *Brown v. Brody*, 199 F.3d 466, 452 (D.C. Cir. 1999)). Once a plaintiff

establishes a prima facie case, the employer must provide a legitimate, non-discriminatory or

non-retaliatory reason for its adverse action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

802 (1973); *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015).

The D.C. Circuit has held, however, that "[i]n a Title VII disparate-treatment suit where

an employee has suffered an adverse employment action and an employer has asserted a

legitimate, non-discriminatory reason for the decision, the district court need not—*and should

not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell

Douglas*." *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). Instead,

district courts must "resolve one central question" when considering an employer's motion for

summary judgment: whether "the employee produced sufficient evidence for a reasonable jury

to find that the employer's asserted non-discriminatory reason was not the actual reason[,] and

that the employer intentionally discriminated against the employee on the basis of race, color,

religion, sex, or national origin." *Id.*

A common method of showing the employer's asserted non-discriminatory reason is

pretextual under Title VII is to demonstrate disparate treatment—namely that the employer "has

'treated [a] particular person less favorably than others because of' a protected trait." *Ricci v.

DeStefano*, 557 U.S. 557, 577 (2009) (alteration in original) (quoting *Watson v. Fort Worth Bank

& Tr.*, 487 U.S. 977, 985–86 (1988). As such, "[o]ne way to discredit an employer's

justification" for its employment action "is to show that similarly situated employees of a

different race received more favorable treatment." *Wheeler v. Georgetown Univ. Hosp.*, 812

16

F.3d 1109, 1115 (D.C. Cir. 2016) (quoting *Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 548 F.3d 137, 145 (D.C. Cir. 2008).

"Factors that bear on whether someone is an appropriate comparator include the similarity of the plaintiff's and the putative comparator's jobs and job duties, whether they were disciplined by the same supervisor, and, in cases involving discipline, the similarity of their offenses." *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015). In addition, "[a] disparate-treatment plaintiff must establish 'that the defendant had a discriminatory intent or motive' for taking a job-related action." *Ricci*, 557 U.S. at 577 (quoting *Watson*, 487 U.S. at 986). "'Proof of illicit motive is essential,' and the employee 'at all times' has the burden of proving 'that the defendant intentionally discriminated against' her." *Figueroa v. Pompeo*, 923 F.3d 1078, 1086 (D.C. Cir. 2019) (quoting *Segar v. Smith*, 738 F.2d 1249, 1265, 1267 (D.C. Cir. 1984)). In Title VII discrimination cases, if the plaintiff fails to "produce sufficient evidence that would discredit [the employer's proffered explanation] and show that the actions were retaliatory" or discriminatory, summary judgment must be granted for the defendant. *Baloch v. Kempthorne*, 550 F.3d 1191, 1200 (D.C. Cir. 2008).

Turnbow alleges that she was denied a reasonable accommodation because of her race, and that white nurses have been granted proper accommodation for similar disabilities in the past. *See* Compl. ¶ 15(h); Pl.'s Opp'n at 5–6. Furthermore, Turnbow alleges she was ordered to seek re-evaluation from a physician employed by Sibley in 2023 to "obtain a better report over Turnbow's treating physician Dr. Ibe" and that re-evaluations were not required for white nurses. Compl. ¶ 15(o). Sibley responds that it has a legitimate and non-discriminatory reason for the difficulty in reaching a resolution with Turnbow regarding her return-to-work: Turnbow's refusal to accept the original accommodations offered by Sibley, and her subsequent refusal to

communicate with Sibley regarding new accommodations in light of Dr. Ibe's updated medical evaluation forms.  Def.'s Reply at 9.

Turnbow attempts to refute Sibley's nondiscriminatory reason by stating the reason is "pretext for racial discrimination and [Sibley has] discriminated against the Plaintiff while offering white employees accommodations of light duty in other professional jobs."  Pl.'s Opp'n at 17.  However, Turnbow has not offered any evidence of Sibley's intent to discriminate against her, offered comparator evidence to buttress her discrimination claim, or explained what evidence of discrimination discovery may reveal.  *See generally* Compl.; Pl.'s Opp'n.  This is so despite this Court's prior instructions to Turnbow, informing her of her obligation to "rebut the moving party's affidavits with evidence, such as other affidavits or sworn statements; mere statements that the moving party's affidavits are inaccurate or incorrect are not sufficient."  Order at 2, ECF No. 8.

To show disparate treatment and "to discredit [Sibley's] justification" that no reasonable return-to-work agreement was reached because of Turnbow's initial rejection of accommodation and persistent lack of communication, Turnbow must provide *some* evidence that similarly situated white nurses with similar accommodations requests received "more favorable treatment."  *Wheeler*, 812 F.3d at 1115 (quoting *Royall*, 548 F.3d at 145).  Turnbow's disparate treatment claim cannot survive summary judgment absent some evidence "'that the defendant had a discriminatory intent or motive' for taking a job-related action."  *Ricci*, 557 U.S. at 577 (quoting *Watson*, 487 U.S. at 986).  Turnbow, "at all times," bears the burden of proof of showing "that the defendant intentionally discriminated against her."  *Figueroa*, 923 F.3d at 1086; *Segar*, 738 F.2d at 1267 (stating "the ultimate burden of persua[sion] . . . remains at all times with the plaintiff" claiming disparate treatment (quoting *Tex. Dep't of Cmty. Affs. v.*

*Burdine*, 450 U.S. 248, 253 (1981)).  Turnbow has not met that burden here.  Bare assertions of disparate treatment, without support such as comparator evidence, are not enough to defeat Sibley's motion for summary judgment.  *See Walker v. McCarthy*, 170 F. Supp. 3d 94, 108 (D.D.C. 2016) ("[W]here a plaintiff relying on comparator evidence fails to produce 'evidence that the comparators were actually similarly situated to h[er], an inference of falsity or discrimination is not reasonable,' and summary judgment is appropriate." (quoting *Montgomery v. Chao*, 546 F.3d 703, 707 (D.C. Cir. 2008))).

Finally, Turnbow also asserts that summary judgment is improper as to her Title VII claim at this time, before "full discovery."  Pl.'s Opp'n at 2.  Turnbow contends that "Discovery will show evidence that similarly situated employees of different races were treated differently by Defendant Sibley.  For example, granting accommodations to white employees while denying them to Black employees under similar circumstances."  *Id.* at 18.  However, Turnbow has failed to identify with sufficient particularity how discovery would unearth a disputed issue of material fact.  *See Ikossi*, 516 F.3d at 1045 (reaffirming that the party opposing summary judgment "ha[s] the burden to state with 'sufficient particularity . . . why discovery [is] necessary'" (quoting *Strang*, 864 F.2d at 861).  Turnbow's generic assertions are insufficient to warrant the delay of summary judgment.  *See id.*; *see also Reshard v. Peters*, 579 F. Supp. 2d 57, 68 n.11 (D.D.C. 2008) (granting pre-discovery motion for summary judgment where a *pro se* plaintiff "did not identify any probable facts not already available to her that would raise a triable issue of fact" or "demonstrate a reasonable basis for believing that the requested discovery will uncover triable issues of fact").  For example, she has not identified any white nurse who was treated more favorably, nor has she identified individuals she would hope to depose if given the opportunity. *See Ikossi*, 516 F.3d at 1045–46.  Having been a nurse at Sibley since April 2020, Turnbow

should have, at least, some inkling of a white nurse who received more favorable treatment. Apparently, she does not.  Turnbow simply has not met her burden.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (instructing that Rule 8's liberal pleading standard "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").

In sum, Turnbow has not "produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason [for any alleged adverse employment action,] and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin."  *Brady*, 520 F.3d at 494. Indeed, Turnbow has not produced *any* evidence to that effect.  As a result, Turnbow has not demonstrated a genuine dispute of material fact for trial on her Title VII racial discrimination claim, and summary judgment in favor of Sibley is, thus, appropriate.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  June 5, 2025                                        RUDOLPH CONTRERAS
                                                           United States District Judge